**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ARETHA EDWARDS,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**GENIUS GOURMET, INC.** Delaware corporation,<br><br>Defendants. | Case No. ______________<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Aretha Edwards ("**Plaintiff**"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Defendant, Genius Gourmet, Inc., ("**Defendant**") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of his counsel as follows:

## NATURE OF THE ACTION

1. This class action challenges Defendant's false and misleading marketing of its Nut Roll Protein Bar branded "0g added Sugar" candy products ("**Products**" or "**Nut Roll Protein**")[1], sold in grocery and department stores nationwide.

2. The Products are offered in the following flavors: (1) Peanut Butter Flavored and (2) Vanilla Caramel Peanut.[2] A true copy of the label of one of the Defendant's Products is below:

[1] The Products refer to Genius Gourmet Nut Roll Protein Bars in all varieties bearing the claim "Zero Sugar." All varieties of the Products are substantially similar because they bear the same deceptive representation alleged in this Complaint. Plaintiff reserves the right to amend the complete list of Products included in this lawsuit as information arises through discovery.

[2] Defendant also offers a Peanut Butter Flavored variety, which is not included in the Product definition or the claims asserted in this Complaint.







3. Plaintiff and class members, who have purchased these Products, bring this Action because of material representations which are false and misleading: Defendant markets and advertises the Products as "0 added sugar" (collectively, the "**Representations**"). However, unbeknownst to reasonable consumers, the Products contain added sugar in the form of allulose. Allulose is a monosaccharide and therefore sugar under the applicable federal and Illinois labeling standards. It is not present in trace amounts; it is the second-listed and predominant ingredient by weight.

4. Defendants' own labeling admits that the Vanilla Caramel Peanut variety of the Products contain nine grams of allulose per serving. Defendants' labeling further discloses that the Vanilla Caramel Peanut variety contains two grams of total sugars per serving, while simultaneously displaying the representation "0g added sugar."

5. Defendant made its Representations about "0g Added Sugar" in its Products in order to introduce health-conscious consumers, like Plaintiff, to purchase the Products. But these representations are misleading and false for the reasons set forth in this Complaint.

6. For as long as consumable goods have been sold, "healthwashing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. To compound matters, the misrepresentations made on the Products are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiff and class members would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

7. Against this backdrop, Plaintiff and class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiff, subclass and class members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made on the Products packaging and in advertising or would not have purchased the Products at all.

## **JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This

Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

9. This Court has personal jurisdiction over the Defendant because the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Product, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant period. At that time, Defendant was engaged in business activities in Illinois.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Product in this District. Venue is also proper because Plaintiff resides in this District.

## PARTIES

*Plaintiff Aretha Edwards*

11. Plaintiff, Aretha Edwards, is an individual consumer who, at all times material hereto, is and was a resident and citizen of Chicago, Illinois.

12. Plaintiff Aretha purchased Genius Gourmet Protein Nut Roll Bars – Vanilla Caramel Peanut on August 2, 2025, at a Costco store in Chicago, Illinois.

13. Plaintiff Aretha reviewed and relied upon the Product's representation of "0g Added Sugar" when purchasing the Product. This representation was one of the reasons she purchased the Product.

*Defendant Genius Gourmet, Inc.*

14. Defendant Genius Gourmet, Inc. is a Delaware corporation that maintains its principal place of business at 418 E Lakeside Ave. Coeur d'Alene, Idaho 83814. Upon information and belief, Defendant controls the Product, including its formulation, labeling, and marketing.

**COMMON FACTUAL ALLEGATIONS**

**Consumers Seek Out and Pay More for Products That Contain No Sugars**

15. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[3] Sugar-sweetened beverages are by far the top source of added sugars for Americans.[4]

16. For decades, federal health authorities have recommended limiting added sugar intake.[5] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[6]

---

[3] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[4] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

[5] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[6] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-

17. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "0g Added Sugar" command higher prices than comparable products that do not bear that claim, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

18. Defendant has capitalized on that demand. It markets its Vanilla Caramel Peanut Nut Roll Protein Bar with the representation "0g Added Sugar," even though its ingredient list identifies allulose as the second ingredient and its labeling expressly states that the Product "Contains 9g Allulose." Yet the same label represents that the Product contains only two grams of "Total Sugars" per serving, thereby excluding the nine grams of allulose from its calculation of Total Sugars and treating allulose as though it were not sugar.

19. Plaintiff alleges that this representation is misleading for the reasons set forth in this Complaint and has given Defendant an unfair competitive advantage at the expense of consumers.

**<u>Defendant's False and Misleading Representations</u>**

20. Defendant manufactures, markets, and sells its Genius Gourmet Protein Nut Roll Bars – Vanilla Caramel Peanut bearing the representation "0g Added Sugar." The Product is sold at major retailers throughout Illinois and the United States, including Costco.

21. Below is an illustrative sampling of the Product and Representations of the flavor "Vanilla Caramel Peanut":

content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.



[7]

22. On the Product's packaging, Defendant prominently represents that the Product contains "0g Added Sugar" yet the Product's labeling also expressly states that "Contains 9g Allulose."




23. The Representations "0g Added Sugar" communicates to reasonable consumers that no sugar has been added to the Product. Plaintiff alleges that this Representation is false and

---

[7] See https://www.geniusgourmet.com/products/skippy-protein-nut-roll-bar?_pos=1&_psq=nut+prote&_psid=8b9fc032f&_ss=e (Last accessed on September 30, 2026)

misleading because Defendant adds nine grams of allulose to the Product.

24. "0g Added Sugar" is an objective and quantitative claim concerning the Product's added sugar content. The Product's Nutrition Facts panel further declares "Includes 0g Added Sugars," reinforcing that message. Although the labeling separately states "Contains 9g Allulose," it declares only two grams of "Total Sugars" per serving, thereby excluding the nine grams of allulose from its calculation of Total Sugars. Plaintiff alleges that this presentation misleadingly treats allulose as though it were not sugar and, in turn, misleads reasonable consumers regarding the Product's total and added sugar content.

**Allulose Is a Sugar**

25. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[8] No such rulemaking ever occurred.

26. In *Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. No. 25-2087, 2026 WL 2150193 (7th Cir. July 27, 2026). The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar.

27. The industry also recognizes that allulose is a sugar. Indeed, one of the most

---

[8] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[9] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[10] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[11]

28. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[12] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[13]

29. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

30. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling.

---

[9] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[10] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[11] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[12] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[13] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate "0g Added Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

31. The "0g Added Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

32. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

33. Within Subpart D, section 101.60(c)(2) governs the use of the terms "no added sugar," "without added sugar," and "no sugar added." That regulation permits those terms only if all specified requirements are satisfied, including:

> (i) No sugars, as defined in § 101.9(c)(6)(ii), or ingredients containing sugars that functionally replace added sugars are added during processing or packaging; and
>
> (ii) The product contains no ingredients with added sugars, such as jam, jelly, or concentrated fruit juice.

34. Plaintiff alleges that the Product's "0g Added Sugar" Representation is misleading. Section 101.60(c)(2)(i) cross-references the definition of sugars in 21 C.F.R. §

101.9(c)(6)(ii). Although allulose is a monosaccharide, FDA guidance provides for enforcement discretion concerning its exclusion from the amounts of Total Sugars and Added Sugars declared on Nutrition Facts labels.

35. By Defendant's own admission on the Product's labeling, each serving of the Product contains nine grams of allulose. The Product nevertheless bears the Representation "0g Added Sugar," which Plaintiff alleges is misleading for the reasons set forth in this Complaint.

36. Defendant's disclosure that the Product "Contains 9g Allulose" does not, Plaintiff alleges, cure the misleading impression conveyed by the "0g Added Sugar" Representation.

37. Plaintiff alleges that reasonable consumers would not understand from the allulose disclosure that Defendant adds nine grams of allulose per serving to the Product while declaring "0g Added Sugar."

38. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

39. Plaintiff does not seek to enforce the FDCA directly. Rather, Plaintiff seeks relief under independently enforceable state consumer-protection laws, including Illinois state law provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards Illinois has adopted and the conduct that renders the Products misbranded under Illinois law.

**<u>Defendant's Conduct Violates Illinois' Food Labeling Laws</u>**

40. The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq., prohibits the misbranding of food sold in Illinois. Under 410 ILCS 620/11(a), "[a] food is misbranded" if "its labeling is false or misleading in any particular."

41. In determining whether labeling or advertising is misleading, Illinois law requires

consideration of "not only representations made or suggested by statement, word, design, device, sound or any combination thereof," but also whether the labeling or advertising fails to disclose material facts in light of the representations made. 410 ILCS 620/2.11.

42. The IFDCA also incorporates applicable federal food-labeling regulations into Illinois law. *See* 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation."). Federal regulations provide that "sugars" include "all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii). Although allulose is a monosaccharide, FDA guidance provides for enforcement discretion concerning its exclusion from Total Sugars and Added Sugars declarations on Nutrition Facts labels.

43. Federal regulations separately govern claims that a food contains no added sugar. Section 101.60(c)(2) establishes conditions for using the terms "no added sugar," "without added sugar," and "no sugar added."

44. Defendant prominently represents on the Products' labeling and packaging that the Products contain "0g Added Sugar." The Products' labeling also expressly states "Contains 9g Allulose." Plaintiff alleges that the "0g Added Sugar" Representation is misleading for the reasons set forth in this Complaint.

45. Defendant's representations communicates to reasonable consumers that no sugar has been added to the Product, notwithstanding Defendant's addition of allulose. Plaintiff further alleges that the separate allulose disclosure does not adequately explain the relationship between the added allulose and the "0g Added Sugar" Representation. *See* 410 ILCS 620/2.11.

46. Accordingly, Plaintiff alleges that the Product's labeling is misleading and renders the Product misbranded under Illinois law, and that Defendant's distribution and sale of the

Product violate the IFDCA.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

47. Plaintiff alleges that reasonable have no reason to look beyond the conspicuous representation on the Product's packaging that the Product contains "0g Added Sugar" to determine whether sugar has been added to the Product.

48. Plaintiff alleges that the misleading impression is reinforced because a consumer who reviews the Nutrition Facts panel would encounter the disclosure "Includes 0g Added Sugars," even though the Product's labeling separately states "Contains 9g Allulose." The Nutrition Facts panel also declares two grams of Total Sugars per serving. Plaintiff alleges that these disclosures do not adequately explain the relationship between the added allulose and the "0g Added Sugar" Representation.

49. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

50. Defendant knew, or should have known, that the Representations were misleading when it marketed, advertised, labeled, distributed, and sold the Product. Specifically, Defendant knew that: (a) the Product contains nine grams of allulose per serving; (b) allulose is a sugar that is added to the Product; (c) its labeling represented that the Product contains "0g Added Sugar"; and (d) consumers would rely on that Representation when purchasing. Plaintiff alleges that Defendant knew or should have known that its presentation would mislead reasonable

consumers about the addition of allulose to the Product.

51. Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**Defendant's "0g Added Sugar" Claims Injured Plaintiff and the Class**

52. Defendant failed to adequately disclose material facts about the Product, including the relationship between the added allulose and the "0g Added Sugar" Representation. Although the Product's labeling states "Contains 9g Allulose," this disclosure did not cure the misleading impression created by the Representation.

53. As an immediate, direct, and proximate result of Defendant's allegedly false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for a Product that was not as represented; (b) paid a premium price for a Product that was not as represented; (c) were deprived of the benefit of the bargain because the Product they purchased differed from what Defendant represented; (d) purchased a Product worth less than represented; (e) did not receive a Product that met the expectations Defendant created; (f) purchased a Product that Plaintiff and members of the Class did not expect or consent to receive; and (g) purchased a Product containing added allulose despite intending to buy a Product represented as containing "0g Added Sugar."

54. Accordingly, Plaintiff and the Class Members (as defined below) suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

55. Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following classes:

**Illinois Class**:

> All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

**Multi-State Consumer Protection Class**:

> All persons in the States of Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("Multi-State Class" and together with the Illinois Class as the "Members of the Class," "Class Members" or "Class(es)").[14]

56. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

57. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

---

[14] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). Plaintiff has standing to represent the proposed Multi-State Subclass. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

58. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

59. **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy, as the Members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

60. **Commonality:** Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products were "0g Added Sugar";

c. Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Products are misbranded under federal law and, with respect to the Illinois Subclass, Illinois law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiff and the Members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiff and the Members of the Classes are entitled to statutory damages; and

i. Whether Plaintiff and the Members of the Classes are entitled to attorneys' fees and costs.

61. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

62. **Adequacy of Representation:** Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

63. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

64. **Superiority of Class Action:** Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for Members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

65. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

66. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

67. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

68. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

69. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
### (On behalf of Plaintiff and the Multi-State Consumer Protection Class[15])

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Plaintiff brings this Count on behalf of herself and the Multi-State Consumer Protection Class against Defendant.

[15] Plaintiff reserves the right to amend this list of states after discovery.

72. The Consumer Fraud Acts of the States in the Multi-State Consumer Protection Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. Illinois (815 ILCS 505/1, *et seq.*);

b. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

c. Michigan (Mich. Comp. Laws § 445.901, *et seq.*);

d. Minnesota (Minn. Stat. § 325F.67, *et seq.*);

e. Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);

f. New Jersey (N.J. Stat. § 56:8-1, *et seq.*);

g. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

h. Washington (Wash. Rev. Code § 19.86.010, *et seq.*)

73. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

74. Defendant's uniform labeling and marketing Representation of the Product were deceptive and materially misleading.

75. Given Defendant's leading position in the consumer products and dietary industry and its growing popularity as an established and trustworthy national brand, Plaintiff and reasonable consumers trusted and relied on Defendant's Representations, sustaining damages in an amount to be proven at trial.

76. In addition, Defendant's conduct showed malice, motive, and/or reckless disregard for the truth, so an award of punitive damages is appropriate.

77. Plaintiff and the other members of the Multi-State Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Class

because Plaintiff and Members of the Multi-State Class have suffered an injury in fact and lost money because of Defendant's actions set forth herein.

**COUNT II**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiff and the Illinois Class)**

78. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79. Plaintiff brings this cause of action on behalf of herself and the Illinois Class Members against Defendant.

80. Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

81. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

82. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

83. Plaintiff and the proposed Illinois Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

84. The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

85. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

86. Defendant's conduct as alleged constitutes unfair and deceptive acts and practices violating the ICFA. Defendant engaged in deceptive marketing by misrepresenting and omitting material facts regarding the sugar amount in the Product. The Representations were likely to mislead a reasonable consumer.

87. Plaintiff and the other Illinois Class members reasonably relied upon Defendant's Representation, labeling, and omissions alleged herein regarding the Products "0g Added Sugar" claims.

88. Defendant's misconduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, violating 815 ILCS 505/1, et seq, by representing that the Product has characteristics or benefits that its does not have.[16] Defendant also did not intend to sell the products as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

89. Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(3).

90. Defendant's uniform marketing claims were deceptive and materially misleading. Defendant named and labeled the Products in a way that would most impact consumer choices and gain market share. Defendant knew that consumers purchasing the Products would reasonably understand the "0g Added Sugar" representations to mean that the Products contained no sugar.

91. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Class members have suffered ascertainable money losses caused by Defendant's zero added sugar Representations. Had they been aware of the true nature of the

[16] *See,* 815 ILCS § 505/2; 815 ILCS § 510/2(7).

Nut Roll Protein Bar, Plaintiff and Class Members would have paid less for the Nut Roll Protein Bar or would not have purchased them.

92. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Illinois Class)**

93. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff brings this Count on behalf of herself and the Illinois Class.

95. This claim is brought under the law of the State of Illinois.

96. This claim is brought in the alternative to the other Counts. Illinois law and the Federal Rules of Civil Procedure allow Plaintiff to plead alternative theories.

97. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts, including by making the labeling Representation alleged herein.

98. As a direct result of Defendant's deceptive conduct, it obtained unjust and inequitable benefits at the expense of Plaintiff and the Class Members. Defendant's conduct violated fundamental principles of justice, equity, and good conscience. Accordingly, it would be inequitable for Defendant to retain the revenues derived from sales induced by its misleading Representations.

99. Plaintiff and the Class Members conferred substantial financial benefits upon Defendant, through retail purchases of the Products, which materially differed from the representations made by Defendant.

100. Plaintiff and the Class Members seek the imposition of a constructive trust over the profits improperly obtained by Defendant, from which Plaintiff and the Class Members may obtain restitution and disgorgement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

a. Certifying the Illinois and Multi-State Classes pursuant to Federal Rule 23, and appointing Plaintiff and his counsel to represent the Classes;

b. Declaring that Defendant's conduct constitutes:

i. A violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.);

ii. Violations of substantially similar consumer protection statutes of other states;

iii. Unjust enrichment;

c. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and Class members are entitled;

d. Awarding equitable relief, including restitution and/or disgorgement of Defendant's revenues obtained by means of any wrongful act or practice;

e. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses as permitted by law;

f. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

g. Granting such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: October 1, 2026

Respectfully Submitted,

*/s/ Kevin Laukaitis*
**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 789-4462
Email: *klaukaitis@laukaitislaw.com*

*Attorneys for Plaintiff*
*and the Putative Classes*